Good morning. Our first case this morning is MIDDLETON v. MINNESOTA MINING. Mr. Somerville? Good morning, Your Honor. May it please the Court. This appeal centers on one issue, and that is whether the selective use of the term now in the November 1987 agreement between the suitors and Middleton's predecessor in interest, Perry Austin, has meaning. If it does, then Middleton has standing to maintain the suit as an exclusive licensee under the 514 patent. And since this appeal focuses so much on the contract language, I'd like to take a look at the relevant portion of the 1987 agreement, which is found on page A66 of the appendix. Clause B on that page defines four categories of license or patent rights. The first two are specific applications that existed as of the time of the November 1987 agreement. And then we have Clause 4, which further specifies any divisions, reissues, continuations in part, and extensions of the foregoing now owned by a suitor, or under which suitor now has the right to grant licenses, or for which suitor has an application for patent rights pending. Importantly in the focus of this appeal is the absence of the word now from that last category. The reason it's important is because the application for the 514… Does pending itself mean now? So that it's in the present tense? Doesn't pending mean it's now? Ordinarily it would, Your Honor, but has also is in the present tense. But the court will note that in this provision, the contracting parties opted to use the term now has, even though has, again, is in the present tense. But in 1990, there was an assignment of a specific application and a representation that there are no rights or interests outstanding inconsistent with what's granted here. Which clearly means that this particular patent and application were not included in the 1987 agreement. We disagree, Your Honor. A patent that is licensed can be assigned from one order to the next. And that assignment… It was assigned to suit code. That's correct. So in 1987, when the suitors concluded this license agreement, and at least in our position, assigned any… licensed, rather, any applications that the suitors might own in the future, an assignment of that application would be consistent with a license. Because we're not… Middleton never owned the application. It was only a licensee. And again, one owner of a patent can transfer that patent to another owner, and an existing license would not be inconsistent with that transfer at all. So that representation doesn't contradict the fact that the application for the 514 patent was one of the applications owned, albeit in the future, by the suitors that was licensed to Middleton, or Perry Austin in this case, under Clause B-4 that we're looking at. Now, Clause 3 of this 1987 agreement does use the now or in the future, which shows that when they wish to make that clear distinction, they know how to clearly do it. They did it in the very preceding clause. That's true, Your Honor. They did opt to use different language in that clause. Why wouldn't they have done it in the next one if they meant to do the same thing? Because it was unnecessary, given the fact that they used now in the first two clauses, and they omitted it from Clause 3. Our position is… Pending is, again, back to the original thing, pending isn't a now proposition. Again, Your Honor, as is the word has, but in Clause 4, the parties opted to use the term now has. But has pending isn't necessary at all if you mean future rights, right? If you're looking only at future rights, why do you need to even put the has pending in there? Because it would have to be an application that was filed. An example where an application wouldn't be pending is before it's filed at all, or if the application was filed and then withdrawn, something along those lines. This is only talking about something which is obviously divisions, reissues, continuations in part. All of those are something in existence. So I'm not sure I follow the relevance of your point. Well, you could be talking about something the clause doesn't refer to. Well, Your Honor, it could be that there is a draft continuation in part, for example, that is not yet pending. Or again, an application that for whatever reason was filed and then withdrawn, it would no longer be pending at that point. So there would be no license rights conferred to Middleton under those circumstances. Pending is intended to describe the status of the application rather than any temporal context regarding the ownership by the suitors. That's why that term is in there. But more importantly, the word now is not. And under Iowa law, every term in a contract is to be given meaning. But has pending is pretty clear, as Judge Areva says, and this particular patent and application was not pending. Until it was filed 13 months later, that's true, Your Honor. By which time it had been assigned to someone else. No, Your Honor. When it was first filed, it had not been assigned to anyone. Our point is that when it was originally filed by the suitors, at that point, license rights were conferred to Middleton. It was only after the filing of the application that the application was transferred by the suitors to SUTCO. But before that, that application falls under Clause 4 as an application then pending. And that's how license rights are conferred to Perry Lawson in that circumstance. Of course, we're stumbling over each other here because the agreements stumble over each other. Your Honor, certainly there may be different ways to construct the agreements than was done. But the fact is the parties chose this particular language. And more importantly, in 1992, the suitors and Mr. Middleton's company executed an amendment. The purpose of which, on its face, was to identify patents that were the subject of the original license grant. And under Iowa law, construction that the parties themselves give to an agreement, embodied in things just like the 1982 amendment, are supposed to be the best guide to determining what the parties' intentions were. And again, under Iowa law, it's a cardinal rule that that is what the court is supposed to look at, the parties' intentions, in determining how the contract is to be construed. Well, the district court did look at this, and he said the 1992 amendment did not identify the 514 as licensed because the 87 agreement had not done so. Your Honor, that's putting the cart before the horse in our estimation. In other words, the court said, here's what I conclude the 1987 agreement to mean, and now I'll look at the 1992 amendment. And because I find it inconsistent with the construction that I've already given… But in this case, as you characterized it, the cart is an 87 agreement. It did come before the horse in 1992. Isn't he entirely right to look at the 87 agreement first and find out what it means, and then decide if the 92 agreement is somehow out of harmony with that? Your Honor, what we would contend is that everything should be looked at as a whole. Certainly, the language of the agreement is important. But he did look at it. He did consider it. He did, Your Honor. He didn't ignore it, but what he said was, because I've already decided what the 1987 agreement means, I am going to find that the 1992 agreement is inconsistent with that construction. Under our view of the law, the 1992… It's not inconsistent. He finds a way that it is consistent. It's not mentioned because it wasn't licensed. No, Your Honor. He said that it's not mentioned because it didn't exist. And in 1992, the parties were trying, according to the district court, to introduce a patent that didn't exist in 1987 as part of the license grant. And what the district court judge said was, that can't happen because I've already determined that the 1987 agreement is limited to applications existing as of the time of the agreement. When the parties themselves said, no, the 514 patent is part of this original agreement. What 3M says, what the amendment is really doing, is simply broadening the license grant. Our response to that is that that's not true because one of the patents that the parties identify in this 1992 amendment, the application for that patent was spelled out in the agency agreement. If we don't agree with you on the 1987 license agreement, if we find that the district court's construction has an application for patents rights pending is correct, then you have to agree that the 1992 agreement can't modify the 1987 agreement, right? Because he didn't own it anymore in 1992. So if we all believe that 1987 agreement does not confer the rights to this patent, he can't come along in 1992 and suddenly give them over. That's correct because he didn't own it at that time. He no longer owns them. But our point is... That's what the district court said. That's the way I interpreted the district court's opinion. Well, in the first instance, what the district court found was that the 87 agreement is limited to applications existing as of the time the agreement was concluded. And then the district court went on to say the 92 amendment can't change that. That is what the district court said. The way we read the 92 amendment, especially given its facial purpose of identifying patents rather than adding to them, the 92 amendment is the party's construction of the 1987 agreement to the effect that the 514 patent, which resulted from an application owned by the suitors, was part of the licensed grant, albeit even though it came into existence after the 87 agreement was concluded. If the 87 agreement licensed Perry Austin with all rights, then why does the inventor in 1990 assign Sukko some portion of those rights? He must not have thought he gave everything to Perry Austin three years earlier, right? Well, he granted license rights, Your Honor, which is different than an assignment. So Suter was still the owner under the 87 agreement and could transfer that ownership to another party, albeit subject to the license rights that he had granted to Perry Austin in 87. So he didn't think he gave all the rights to Perry Austin in 87. And he would be right, Your Honor, because he didn't transfer ownership. That is typically what exclusive licenses do. They retain ownership interest in the patentee but grant effectively all rights to the exclusive licensee. But the ownership in what's recorded in the patent office records is still in the patentee as opposed to the exclusive licensee. So yes, he didn't think he gave everything, i.e. ownership, to Perry Austin in the 87 agreement, which is how he could still transfer ownership to Sukko in 1990. Your Honor, the final thing that we would argue is that if this court is to find that there is something at least ambiguous on the face of the 87 agreement, that it look to the 92 agreement and look to the equities to reform the contract, making it consistent with the party's intentions, i.e. that the 514 patent was indeed a patent ultimately licensed to Perry Austin and thus to Middleton. 3M has said a couple of things. First of all, that we didn't ask for this relief below. And secondly, that reformation can't change the language of the contract. And our response is twofold. Number one, under Iowa law, reformation is not a remedy. It is a tool the courts use to give meaningful construction to contracts that truly reflects what the party's intentions were at the time the contract was entered into. The second thing, as far as the second issue is concerned, Your Honor, we're not asking that the court change the terms of the contract. We're asking that they construe them using this reformation doctrine, again, so that they are consistent with what the party's truly intended. As far as the equities are concerned, I don't think there could be a serious challenge to the fact that after 16 years, three earlier... The 92 agreement isn't just identifying the rights at all, is it? It's really changing things. No, Your Honor. It's identifying those rights. But it changed them pretty extensively, didn't it? There are other parts of the amendment that did change rights between the parties. But as far as the patents that were being identified, because that's the term that's used there, they were simply identifying the patents that were part of the original grant. And that's the reason why one of the patents that they identified already had the application for that patent identified expressly in the 1987 agreement. If the purpose of the amendment were truly to expand the license rights, there would be absolutely no reason to identify that other patent. It wouldn't be necessary. The only explanation is that the parties were truly trying to, quote, identify the patents that were the subject of the original agreement. Well, you talked right through your red light. But let me just point out that the 1992 agreement talks about modifying the license agreement. Modifying. There is a modification in some sense of the 1987 agreement as far as other provisions are concerned. But it does several things, not just modify. It also talks about identifying. Thank you, Your Honor. Thank you, Mr. Summerfield. You did consume your rebuttal time. We'll restore that. Would you give Mr. Gross an extra two minutes if he needs to use it? Yes, sir. I'll keep the seat. Mr. Gross? Thank you, Your Honors. May it please the Court, David Gross on behalf of 3M with me at table is Mr. Prodig. The most important date for purposes of the bill is April 3rd, 1990. On April 3rd, 1990, Mr. Souter assigned all rights to the patent to SUTCO, and this Court has made it crystal clear. You have to respect corporate formalities. And if you, for whatever reason, assign it to another entity, that other entity now owns the patent. And Middleton has agreed that SUTCO has owned the patent at all relevant times. In fact, SUTCO managed the re-exam. SUTCO has been the only owner of the patent since April. There's no confusion. There's no issue on that. And I wanted to follow up on Judge Laurie's questioning. If we look at the 1987 license agreement, and it's at A281 on the record. I'm sorry, it's A67 on the record. In it, at the top of page 3, the parties write as follows. They say, Souter agrees that this grant of license shall be exclusive and that she'll grant no further licenses to any other party. He then says, all rights which Souter may have under his license or patent rights are hereby transferred to Perry Austin. In other words, this is a transfer of a lot of rights. There's at least some sticks here. It's clearly an exclusive license, and he's doing everything he can to say, I'm giving you very important, very significant rights. Then on April 3, 1990, after saying that in the 87 agreement, he says to the Patent Office, I, Souter, am now going to assign the entire right, title, and interest in and to this application of the 514 patent. Your Honors, had the 514 patent been included somehow in the 87 agreement, which it is not because of the plain language, but had it been, Mr. Souter could not have gone to the Patent Office and said, I am now giving the entire right, title, and interest. There's an inconsistency when someone uses that wide-ranging, all-encompassing phrase. In a sense, he's saying it's unencumbered. There's no bundle of sticks. I have everything. And so we think when you look at the record in this case— But doesn't the subsequent assignment not preclude the grant of a previous license? And so when he says my assignment is not inconsistent with previous rights, the previous license still exists. Yes, Your Honor. What I would say, though, Judge Lurie, is when you tell the Patent Office I'm giving the entire right, title, and interest, that gives the impression it's unencumbered. That gives the impression I have everything. I have every single stick in my bundle. There was no qualification. Was there any evidence in the record? Because I've certainly never seen someone file an assignment with the Patent Office and articulate a whole slew of licenses that may have already been granted. Was there something in the record to suggest that the language they use is inconsistent with the normal process that's used when you file assignments and such declarations to BTO? No, Judge Moore. All we have in the record is that in the 87 agreements they use sweeping language. All rights which Souter may have under his license or patent rights, all rights, are hereby transferred to Perry-Austin. And then to the Patent Office he says the entire right, title, and interest is not going to suit Koch. We see an inconsistency in that language, Your Honor. But that's where it ends. We haven't had experts testify about a typical course of assignments. When you assign your rights and you lodge that assignment with the PTO, I've certainly never seen somebody list by bullet point licenses that might already exist or anything because title and ownership rights are different from licensing rights. Your Honor, the only thing I... Your Honor, what I would say is, generally speaking, that makes sense that you have to assign it and there's language to use in assignments. And is there any obligation, I just want to be clear, is there any obligation to inform the PTO of licenses? Like, for example, you're supposed to inform the PTO if you assign it and there's supposed to be a notation on the patent. But is there any corresponding obligation to inform the PTO when you license a patent? Your Honor, I'm not aware of an obligation to inform the PTO. We're simply... Your Honor, what we're simply saying is when you say all rights which suitor may have, all rights are hereby transferred to Perry Austin. That's what they say on page 3. That's sweeping language. And then when you say that even... But this is a licensing agreement, so it's not really sweeping language. I don't see how you can read the 1987 agreement as turning over all rights, i.e. namely ownership and title. That's what we're distinguishing between ownership and title. Your Honor, what we're saying is for purposes of standing and for purposes of contract interpretation and looking at the circumstances surrounding this, we believe there's an inconsistency when you use sweeping language in the 1987 agreement and sweeping language for the PTO, and those appear inconsistent. Circling back to where we are, the key issue in this case is that after April 3, 1990, no matter what we do with this issue that we're discussing, no matter what, Mr. Souter had no rights, none whatsoever. So whatever Mr. Souter does after April 3, 1990, he's now talking about something for which he has no rights. And that's irrespective of the interpretation of the 1987 agreement. Yes, Your Honor. And what that means is in 1992, when you see this amendment, and they put a lot of weight on the amendment of 1992, when Mr. Souter is talking about the 514 patent, he is now talking about a patent for which he has absolutely no interest, literally no interest of any kind, because we know that he created the 1987 agreement, right? We know that. But when he got to 1990, he completely gave up the 514 patent. So it's of no help. Doesn't that suggest that the 92 amendment was really there to clarify that the 87 agreement had included the 514 patent? Your Honor, I don't think so. I think what's going on is the 87 agreement had the following eight words, and this is what they're focusing on. Here are the eight words. Souter has an application for patent rights pending. Those are the eight words, and that's what we spent most of this oral argument on. And in just ordinary plain language, if someone says to someone else, I just want to tell you something. Souter has an application for patent rights pending. There is absolutely no confusion. No one says, well, does that mean five years from now, Souter may have an application for patent rights? It's like, no, I'll say it again. Souter has an application. Is 92 Souter still a party to the 87 agreement? He is, Your Honor. Therefore, he could speak to his intent in 87 in the 92 agreement, right? Well, Your Honor, what we're now in the land of is that someone is speaking to his intent five years. This is not the negotiations. This is not discussions. This is not conversations. This is not letters. It's five years later, and it's after he has relinquished all rights in the 514 patent, and we think that means it should be of almost no weight because you've relinquished all your rights, so you should have nothing to say about the 514 patent, and it's five years later. So it's just of no consequence. In any event, we're talking about standing to sue. Yes, Your Honor. And if the patent is gone, they don't have standing to sue. Exactly, Your Honor. And, in fact, there's a case. The Clinton Physical Therapy case is a case that we cite in our brief, and in that case, the district court had excluded an agreement that was five years later, and one of the parties had said five years later that they said something about this agreement from five years before that was very helpful to one of the parties, and the district court said, no, I'm not going to allow that, and the Supreme Court of Iowa said, yeah, that's irrelevant. It's just too far away. Yeah, but the district court didn't do that here. He considered the 1992 agreement. He didn't rule the way you're suggesting, which is it's irrelevant, it's prejudicial, I won't consider it, and that seems to be what you're doing to us. You're saying it's prejudicial. He didn't even own these rights, so you can't give it any import. It seems like you should be focusing on the language and not the context. That's your better case. Your Honor, I believe the language, which is Souter has an application for patent rights pending, ends it. That is so crystal clear. There's no ambiguity. You don't look at this and say, I think that might include the future. In fact, when you go up to the above section, they say may in the future. They use very different language. They say, or any time in the future may have the right. If they want to talk about the future, they say any time in the future may have the right. So, Judge Moore, we don't see any confusion whatsoever, which means we're finished. And a party can't, five years later, say I'm going to amend my 87 agreement and try to call it identification. If the 87 agreement is crystal clear that it's the present, which means you carved out patents that are going to be filed in the future, and while they are applications, you've reserved the right to pull them out of the scheme. You basically said... What's the strongest argument? The non-inclusion of this patent in the 87 agreement or its assignment later? We think the strongest argument is the phrase, Souter has an application for patent rights pending, is clearly present. It's not reasonable to read that as including the future, and so we're finished. We think we're just finished. We don't think you need to dive into the 1990 assignment or the 1992 amendment when it's this crystal clear, but when you take a look at the assignment, you do notice that the license agreement had created this period of time. What it said was if it's an issued patent, it's covered by the license. If it's a pending application, if Souter has an application for patent rights pending, that's covered. But there's this period of time when there is a future application, and during that period of time, Souter reserved the right to take that out of the license agreement. And what's interesting is that's exactly what he did. Mr. Summerfield began his argument, I think in his first sentence, after he said, may it please the court, this case is about the word now. Your view would be the word now has no role to play here. Your Honor, I think that's true, but what I would say is if I'm going to give this court three phrases, I'm going to say any divisions now owned by Souter. What does that mean? There's three clauses. The first two have now in it. The third one doesn't. Yes. And what I would say, Your Honor,  and we ask the question, all right, any divisions now owned by Souter, is that clear that it's the present? Yes. Is there any reasonable debate that it's not the present? No. How about the second phrase, or under which Souter now has the right to grant licenses? Is that the present? Yes. Is there any reasonable argument it's not? No. And then the third phrase, Souter has an application for patent rights pending. Is there any reasonable argument that's not the present? No, it's clearly the present. Could they have, in another way, used the word now the third time? Yes, they could have. But the fact that they used those eight words, Souter has an application for patent rights pending. It's so clear that it's the present that we don't think they were required to change those words and use the word now. And the fact that they somehow didn't use the word now creates a problem for them. And we think that's the lynchpin. It's not that I'm not sympathetic to your interpretation argument. I am. But if you take the word now out of the other clauses, your argument would be they read like present tense too. So the word now has been rendered superfluous. Let's take the word now out of any of the others. How about the second one? Souter now has the right to grant licenses. You would read that as, if we take now out, Souter has the right to grant licenses. And you would argue to us that that is present tense only. It doesn't apply to Mr. Souter's future rights to grant licenses. Correct? Well, Your Honor, if my entire... I don't mean to... I would say that if we took out the word now, there would be an argument about whether it's focused on the present. And I would have to look at the whole phrase. Now has the right to grant licenses. Souter has the right to grant licenses. You would say that that is present tense. We think that has, Your Honor, implies the present tense. So yes, we think that's true. If has implies the present tense, then what was the point of putting now in? We think that the now has makes it clear that it's the present tense. Then you just acknowledge that the last phrase is not clearly present tense. It's only implied to be present tense because of the use of the word has. Your Honor, what I would say is that the word has implies the present tense in the second phrase and in the third phrase. In the third phrase, they add eight words. And the eight words have to be read in context and they have to be read together. So you can't just focus on one word. That's not reasonable. And if you focus on the eight words, it's has an application for patent rights pending. And the phrase has pending can only be interpreted as current. And if you wanted to go future, you do any right in the future may have, which is what they did in number three. Any in the future may have. So, Your Honor, I believe we have to look at all eight words is where we're coming from. And pending is what concludes. And you're probably implying that the word now is redundant with respect to the word has, which is a present tense word. And that since it modifies the previous word patent, we're not talking about a patent in this case. Yes, Your Honor. What I would say is when you see has, it implies the present tense. Now has is obviously present. You see has, it implies the present tense. Now has is obviously present. You see has, it implies the present tense. Has pending, crystal clear. And Judge Moore, it would be a more challenging point if it didn't say has an application for patent rights pending. But if I just say to any reasonable person, someone has an application for patent rights pending, we believe those two words, has and pending, are just as powerful as the two words now has or now own. And so it's the combination of the eight words that make it so clear. And so where we are is we think the district court was correct that this is crystal clear. The district court was correct in not allowing the 92 amendment to modify it, especially since they no longer had any rights. And we think there's no argument for reformation because reformation would involve showing there was some mutual mistake. And they would have to show the mistake based on a real agreement that is other than the 87 agreement. And they are not providing any deposition testimony, any writings, any discussion surrounding 1987 in which there was some real agreement in the record and then the real agreement had some mistake. There's no reformation argument of any kind here because there's no evidence of a real agreement. This court has made it very clear over and over again that for standing, you have to show an oral or written agreement of some kind. And for this appeal, to satisfy their burden of proof, they have focused on the eight words, suitor has an application for patent rights pending. And if they fail to meet their burden of proof with those eight words, then they lack standing. And if they lack standing, then this court should dismiss the case for lack of jurisdiction. Thank you, Mr. Gross. Mr. Summerfield, you have two minutes. I want to focus on Mr. Gross' response to your question, Judge Lurie, about whether the term now plays any role in this appeal. His answer was, I don't think so. In other words, the term doesn't matter and we can just ignore it. We aren't just focusing on the eight words that Mr. Gross kept referring to. We're focusing on the entirety of that clause. And it is indisputable that now appears certain places modifying verbs that are in the present or even the past tense and the last instance, the eight words. But doesn't the word pending supply all the force that now does in the other clause? No, Your Honor. Again, we would contend that that describes the status of the application as opposed to one that has not yet been filed, i.e., it's not pending, or has been filed and withdrawn, i.e., not pending. So it's not a temporal word. It's describing the status of the application. But there wasn't an application at this point. That's true, Your Honor. The point is, though, that that language is broad enough, given the absence of the word now, to cover applications that were then pending or thereafter pending. As far as the 1992 amendment is concerned, Judge Ritter… Pending at any time in the future is what you're saying. Yes, Your Honor. Pending at any time in the future. Which is what the prior clause said, but this one didn't. That's true, Your Honor. It didn't say that, but it did selectively omit the word now. And we think that has to… Your reading it means shall have pending. Your Honor? Shall have pending. Or has pending at any time, not just now. But more importantly, Your Honor, as Judge Ritter pointed out, Mr. Souter was a party to the 1987 amendment. So in 1992, he was the only party that could have clarified or identified the scope of the license grant. Soutko couldn't have done that because Soutko wasn't a party to the 1987 agreement. That's why Mr. Souter's name is on the 1992 clarifying amendment and not Soutko. So he certainly had the ability to say in 1987, this is what I meant. He's the only party that could have done that. And under Iowa law, practical construction is the best indication of the party's true intention. And that is exactly what we have here in 1992. Thank you, Mr. Summerfield. I think we have to stick with time once we've allotted it this way. Thank you. Thank you very much.